IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | § | NO. 5:15-CV-187-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| OL' RIVER HIDEAWAY, LLC, and | § | |
| ROBERT KANE, | § | |
| | § | |
| Defendants. | § | |
| _____ | § | |

ORDER: (1) GRANTING IN PART AND DENYING IN PART MOTION FOR
SUMMARY JUDGMENT; AND (2) DENYING OBJECTIONS TO EVIDENCE

The matters before the Court are: (1) Plaintiff Joe Hand Promotions,

Inc. as Broadcast Licensee of the March 15, 2014 UFC 171: Hendricks v. Lawler

Event's ("Plaintiff") Motion for Summary Judgment (Dkt. # 11); and

(2) Defendant Ol' River Hideaway, LLC, individually and doing business as Ol'

River Hideaway, Ol'River Hideaway, Kane's Ol' River Hideaway, Koozies Ice

House, and Koozies, and Defendant Robert Kane, individually and doing business

as Ol'River Hideaway, Kane's Ol' River Hideaway, Koozies Ice House, Koozies,

also known as Robert M. Kane doing business as Ol' River Hideaway's

(collectively "Defendants") Objections to Plaintiff's Motion for Summary

Judgment Evidence (Dkt. # 12).  Pursuant to Local Rule CV-7(h), the Court finds

this matter suitable for disposition without a hearing, and cancels the hearing set in this case.

After careful consideration of the memoranda in support of and in opposition to the motions, the Court, for the reasons that follow, **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Summary Judgment (Dkt. # 11), and **DENIES** Defendants' Objections to Plaintiff's Evidence (Dkt. # 12).

<u>BACKGROUND</u>

This case is an "anti-piracy" action under the Federal Communications Act of 1934 ("Communications Act"), as amended, 47 U.S.C. §§ 553 and 605.[1]  Plaintiff's suit alleges that Defendants illegally and without authorization intercepted the closed-circuit telecast of the March 14, 2015 UFC 171: Hendricks v. Lawler Event, including the undercard or preliminary bouts ("the Event"), and exhibited the Event in Defendants' establishment ("the bar"),

---

[1] Plaintiff's claim in this case is brought only under § 605.  (<u>See</u> Dkt. # 11 at 6.) Section 605(a) states in relevant part, "[N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception . . . to any person other than the addressee, his agent, or attorney. . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto."

without paying the licensing fee to Plaintiff.  (Dkt. # 1.)  Plaintiff was a broadcast licensee authorized to sublicense the Event at closed circuit locations, such as theaters, arenas, bars, clubs, lounges, restaurants, and other commercial establishments.   Plaintiff has moved for summary judgment.  (Dkt. # 11-1 at 6.)

I.    Objections to Evidence

As an initial matter, the Court will first address Defendants' objections to Plaintiff's summary judgment evidence.  (Dkt. # 12.)  Defendants' object to Plaintiff's inclusion of the affidavit of Thomas P. Riley as evidence in support of summary judgment.  (Id. at 2.)  Specifically, Defendants contend that the attachments to Riley's affidavit, and portions of the affidavit itself, are hearsay, not authenticated, and are made without personal knowledge.  (Id. at 2–7.) Defendants request that portions of the affidavit and its attachments be struck from Plaintiff's motion.  (Id. at 7.)

Defendants' objections are without merit.  Riley's affidavit meets the business records exception to the hearsay rule, despite Defendants' contention that Plaintiff's attorney does not claim to be the custodian or employee of Plaintiff. Fed. R. Evid. 803(6).  Other district courts determining claims under § 605 have found Riley's affidavit admissible under the same exception.  See, e.g., Joe Hand Promotions, Inc. v. 152 Bronx, L.P., 11 F. Supp. 3d 747, 758–59 (S.D. Tex. 2014). These "courts . . . have determined that Riley's affidavit and similar ones which

ha[ve] been used to establish the substantial impact cable piracy has had on Plaintiff's business provide competent evidence in determining liability and sufficient evidence in establishing the substantial impact cable piracy has on Plaintiff's business." Id. at 759; J&J Sports Prods., Inc. v. Orellana, No. H-11-0574, 2012 WL 3155728, at *5 (S.D. Tex. Aug. 2, 2012). Additionally, the Fifth Circuit has determined that the Distributorship Agreement, attached as an exhibit to the affidavit, is independently admissible because contracts are not hearsay. See 152 Bronx, L.P., 11 F. Supp. 3d at 759 (citing Kepner-Tregoe, Inc. v. Leadership Software, 12 F.3d 527, 540 (5th Cir. 1994)). And, the affidavit from the Event auditor is admissible as a sworn statement of a person providing personal observations of what he or she witnessed, regardless of whether it is a business record. Id. The Court therefore **DENIES** Defendants' objections to Plaintiff's summary judgment evidence (Dkt. # 12).

II.   Summary Judgment

A movant is entitled to summary judgment upon showing that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); see also Meadaa v. K.A.P. Enters., L.L.C., 756 F.3d 875, 880 (5th Cir. 2014). A dispute is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the nonmoving party must come forward with specific facts that establish the existence of a genuine issue for trial.  Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc., 738 F.3d 703, 706 (5th Cir. 2013) (quoting Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

In deciding whether a fact issue has been created, the court must draw all reasonable inferences in favor of the nonmoving party, and it "may not make credibility determinations or weigh the evidence."  Tiblier v. Dlabal, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

A.   <u>Liability Under 47 U.S.C. § 605</u>

The parties do not dispute that Defendants advertised and broadcasted the Event at their bar.  (Dkt. # 11 at 4; Dkt. # 13 at 4.)  Defendants, however, argue that they believed they had the right to show the Event at the bar, without paying a licensing fee to Plaintiff, because they had purchased the Event from their television provider, Dish Network ("Dish").  (Dkt. # 13 at 6.)  Defendants contend that, through no fault of their own, their Dish account was set up and installed as a residential account instead of a commercial account.  (<u>Id.</u> at 4.)  Thus, after paying the residential rate for the Event, Defendants assert that they had no reason to believe their showing of the Event would constitute a violation of a federal statute. (<u>Id.</u> at 4–5.)

The Communications Act is a strict liability statute.  To violate the Communications Act, a plaintiff need only prove that (1) the Event was shown in the Defendants' establishment and (2) the plaintiff did not authorize the exhibition of the Event at the establishment.  47 U.S.C. § 605; J<u>&J Sports Prods., Inc. v.</u> <u>Casita Guanajuato, Inc.,</u> 2014 WL 1092177, at *1 (W.D. Tex. Mar. 19, 2014).

First, there is no dispute that Defendants displayed the Event at the bar on March 15, 2014.  Second, Plaintiff has provided evidence that Defendants did not have authorization or a valid commercial account to display the Event that day.  Accordingly, the Court finds that Plaintiff has successfully established

6

Defendants' liability pursuant to § 605.  Furthermore, because § 605 is a strict liability statute, then Defendants' belief that they lawfully purchased the Event is not a valid defense under the Communications Act.  See, e.g., 152 Bronx, L.P., 11 F. Supp. 3d at 753; Nat'l Satellite Sports, Inc. v. Eliadis, Inc. d/b/a Melody Lane Lounge, 253 F.3d 900, 916–17 (6th Cir. 2001) ("Even assuming, as the defendants contend, that there was no 'interception' here because [the bar] was 'authorized' by [the residential distributor] to receive the Event on a pay-per-view basis, defendants still have violated the Act because they clearly were not authorized to then broadcast the Event to the patrons of a commercial establishment such as [the bar] .... The first and third sentences of [§ 605] do not require an 'interception' of a cable transmission and clearly proscribe the unauthorized divulgence or use of communications which have been 'received' legally for certain purposes."); Garden City Boxing Club, Inc. v. Vinson, No. 3:03–CV–0700–BD (P), 2003 WL 22077958, at *2 (N.D. Tex. Sept. 3, 2003) ("The fact that the defendant may have purchased and lawfully received the Lewis–Tyson fight from DirectTV does not immunize her from liability for then broadcasting the event to patrons at her bar without obtaining authorization from the plaintiff, the exclusive licensee."); Joe Hand Promotions, Inc. v. Lee, Civ. A. No. H–11–2904, 2012 WL 1909348, at *3 (S.D. Tex. May 24, 2012); Orellana,

2012 WL 3155728, at *4 ("Any unauthorized showing of the Event is a violation of the Communications Act.").

Plaintiff does not seek actual damages for Defendants' violation, but instead requests statutory damages under § 605 in an amount of $10,000. (Dkt. # 11 at 8, 11.) Pursuant to § 605, the Court may award statutory damages of not less than $1,000 or more than $10,000 per violation. 47 U.S.C. § 605(e)(3)(c)(i)(II).

The Court finds that a statutory damage award of $3,000 is appropriate in this case. Here, Plaintiff could have charged $950 for a venue comparable to Defendants' bar. (Dkt. # 11-1 at 29 (stating that Defendants' bar has a capacity of approximately 100 people); Dkt. # 11-1 at 38 (noting a typical charge of $950 for a venue seating according to the Fire Code Occupancy of 0-100 people)). An additional $2,050 is reasonable to deter future violations.

B.    Whether the Violation was "Willful" and for the Purpose of "Commercial Advantage?"

Arguing that a willful violation for commercial advantage and financial gain has been established, Plaintiff requests additional statutory damages pursuant to § 605(e)(3)(C)(ii) in the amount of $50,000. (Dkt. # 11 at 14.) If the Court finds that the "violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," it may, in its discretion, award enhanced damages up to $100,000. Id. § 605(e)(3)(C)(ii). "In

determining the amount of an award for willfulness damages where Defendants

intended to exhibit the Event to secure a private financial gain and direct

commercial advantage by misappropriating Plaintiff's licensed exhibitions and

infringing on its rights, courts have considered such factors as the number of

televisions on which defendants broadcast the Event, the food and beverages it sold

to customers, as well as the cover charge, and whether it was broadcast in a

relatively urban city where the broadcast would have more than a minimal impact."

See 152 Bronx, L.P., 11 F. Supp. 3d at 756 (collecting cases).

   Defendants contend that they did not willfully violate § 605 because

they did not realize they were paying a residential rate for their satellite service.

(Dkt. # 13 at 3.)  They assert that Dish agents and employees mistakenly set-up and

installed their account as a residential account, despite the fact that the bar was

obviously a commercial establishment.  (Id.)  As evidence, they attach a letter from

Dish, apologizing to Defendants and notifying them that their satellite account

"was incorrectly set up as a residential account on August 2, 2012."  (Dkt. # 13-1

at 22.)  As such, they argue they should not be liable for willful violation of § 605.

(Id. at 5.)

   In support of its contention that Defendants' willfully violated the

statute, Plaintiff has presented evidence that Defendants (1) advertised the showing

of the Event, (2) broadcasted the Event on three televisions, one of which was a

large screen 60" television, and (3) served beverages to the forty-four patrons that were present at the bar during the Event.  (Dkt. # 11-1 at 28–29.)  Conversely, Defendants have presented evidence that (1) there was no cover charge for the event, (2) it did not charge a premium price for beer and wine (the only beverages served at the bar), (3) the amount of patrons at the bar on March 15, 2014, was consistent with its average customer base, and (4) its profit from wine and beer sales that night was consistent with its sales during the previous thirty-day period. (Dkt. # 13-1 at 3, 20.)

On this record, the Court finds that a willful damage violation is not warranted under the circumstances of this case.  There is no evidence that Defendants repeatedly violated the law over an extended period of time.  Nor is there evidence that they received substantial monetary gain by receiving Plaintiff's satellite programming without its authorization.  The statutory damage amount of $3000 is sufficient to deter any future violation of § 605 by Defendants.

C.   Attorney's Fees, Injunctive Relief, and Post-Judgment Interest

Plaintiff also seeks attorney's fees in the amount of one-third its recovery, or alternatively, for the hourly time rate of its attorneys.  (Id. at 15.) Under § 605, attorney's fees and costs shall be awarded to an aggrieved party who prevails.  Id. § 605(e)(3)(B)(iii).  Defendants contest the award of attorney's fees in this case.  (Dkt. # 13 at 10–11.)

10

In this case, the damages sought by Plaintiff greatly outweigh the damages Plaintiff was ultimately awarded.  It is clear that once Defendants realized they were not paying the commercial rate for their Dish service, they attempted to remedy the situation.  (Dkt. # 13-1.)  Still, although it may be arguable that Defendants should have known that the rate they were paying was too low to be a commercial rate, Plaintiff has failed to submit sufficient evidence that Defendants knew they were paying less than they should be paying to Dish.  Additionally, the evidence indicates that Defendants attempted to settle this case with the vary amount of statutory damages that the Court finds to be sufficient.  (See Dkt. # 13-2 at 5.)

Because the statute provides that an aggrieved party who prevails is entitled to an award of attorney's fees and costs, Plaintiff is awarded its request of one-third its recovery.  Plaintiff is therefore awarded $990 in this case.  Plaintiff has not specified the amount of costs it seeks to recover, nor has it provided any evidence establishing the costs it has incurred.  Therefore, the Court will not award any costs at this time.

Additionally, the Court finds that Plaintiff's request for a permanent injunction is unnecessary to the extent it is merely intended to prevent Defendants from violating the Communications Act.  The Court therefore denies Plaintiff's request for a permanent injunction.

<u>CONCLUSION</u>

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES**

**IN PART** Plaintiff's Motion for Summary Judgment (Dkt. # 11).  Specifically,

Defendants shall pay Plaintiff: (1) $3,000.00 in statutory damages pursuant to 47

U.S.C. § 605 (e)(3)(C)(i)(II); plus (2) $990 in reasonable attorney's fees; plus

(3) post-judgment interest to be calculated and compounded pursuant to 28 U.S.C.

§ 1961, until paid in full.  The Court **DENIES** Defendants' Objections to

Plaintiff's Evidence (Dkt. # 12).  All other relief not granted herein is **DENIED**.

In light of this Order, the Court **CANCELS** the hearing set in this case for

February 22, 2016.

**IT IS SO ORDERED.**

**DATED**: San Antonio, Texas, February 11, 2016.

David Alan Ezra
Senior United States Distict Judge

12